UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANELLE THOMPSON,

        Plaintiff,

v.                                   Case No:  2:15-cv-53-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff Janelle Thompson seeks judicial review of the denial of her claim for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

### I.    Issues on Appeal

Plaintiff raised three issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Roxanne Fuller (the "ALJ" or "law judge") that there are significant jobs in the national economy that Plaintiff can perform; (2)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

whether the vocational expert ("VE") testimony was defective; and (3) whether the ALJ failed to include all the limitations determined by the state agency psychological consultants in the RFC assessment and the ALJ's hypothetical question to the VE.

## II.    Procedural History and Summary of the ALJ Decision

On June 7, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income. Tr. 102-03, 240, 251.    Plaintiff's applications allege different disability dates, August 29, 2009 or April 20, 2011, but she testified that she became disabled on April 20, 2011.    Tr. 50, 240, 251.    The claims initially were denied on July 18, 2011 and upon reconsideration on August 29, 2011.    Tr. 155-80.    Plaintiff requested and received a hearing before the ALJ on May 20, 2013 during which she was represented by an attorney.    Tr. 41.    As of the date of the hearing, Plaintiff was forty years old and held an associate degree in business administration.    Tr. 44, 46, 240, 251.    Plaintiff and VE Susanna D. Roche testified at the hearing.    The ALJ issued an unfavorable decision on June 14, 2013.    Tr. 34.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.    Tr. 21.    At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the latter alleged onset date of April 20, 2011.    Tr. 21.    At step two, the ALJ found that Plaintiff "has the following severe impairments: obesity, disorders of the lumbar and cervical spine, migraines, chronic pain syndrome, bipolar disorder, schizoaffective type schizophrenia and major depressive disorder."    Tr. 22.    She found that these

impairments "were medically determined by an acceptable medical source, have lasted more than 12 months consecutively, and have more than a minimal effect on the claimant's ability to do basic work activities." *Id.* At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 . . ." *Id.* at 22-23. Taking into account the effect of all of Plaintiff's impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> never climb ramps or stairs; never climb ladders, ropes or scaffolds; never balance; occasional stoop, crouch, kneel, crawl; frequent reaching and overhead reaching of the left non-dominant arm; frequent handling objects, that is gross manipulation with the left hand; frequent fingering, that is fine manipulation of items no smaller than the size of a paper clip with the left hand; occasional exposure to excessive noise; no exposure to moving mechanical parts; no operating a motor vehicle; no exposure to unprotected heights; able to perform simple, routine, repetitive tasks; only occasional superficial interaction with the public, coworkers and supervisors; must use a hand held assistive device throughout the workday.

Id. at 25. The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and the limiting effects of the symptoms are not fully credible. Tr. 26. Next, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a car rental clerk, cleaner II, head cashier, and office manager. Tr. 32. At step five, in considering Plaintiff's "[RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines" and relying

on the VE testimony, the ALJ found that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely addresser and document preparer jobs.   *Id.* at 32-33.   Accordingly, the ALJ ruled that Plaintiff has not been disabled through the date of the decision.   Tr. 34.   On December 7, 2014, the Appeals Council denied Plaintiff's request for review.   Tr. 1-6.   Accordingly, the ALJ's June 14, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on January 29, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the Magistrate Judge, and this matter is now ripe for review. Doc. 19.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.    42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir.2011)). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (*citing Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary

result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner, 2015 WL 1453364*, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

### IV.   Analysis

#### a. Whether the ALJ erred in finding that there are significant jobs in the national economy that Plaintiff can perform.

Plaintiff's first argument on appeal concerns the ALJ's decision in step five that there are a significant number of jobs in the national economy that Plaintiff can perform.  Doc. 26 at 7-13.  The VE testified that Plaintiff can perform the job of document preparer, of which there are 14,904 in the national economy and 746 in the state of Florida, and the job of addresser, of which there are 8,904 in the national economy and 344 in the state of Florida.   Tr. 72.   The VE was unable to provide any jobs in the region of Plaintiff's domicile.   Tr. 73.   Plaintiff argues that the ALJ incorrectly believed that there are 89,004 addresser jobs in the national economy, and this error is significant because "[l]ack of regional numbers and a low number of

nationwide numbers could have reasonably led the ALJ to conclude that there are no numbers existing in the national economy which Plaintiff could perform." Doc. 26 at 9. This significant error, according to Plaintiff, also prevented the ALJ from conducting a proper individual inquiry that must be done on a case by case basis. *Id.* at 10 -11. Moreover, Plaintiff contends that the VE testimony lacked reliability as she did not extrapolate the job numbers herself. *Id.* at 11.

The Commissioner responds that "it is clearly evident that the ALJ made a typographical error in her June 14, 2013 decision[, and] if the ALJ actually believed the VE testified to 89,004, she would have had to misunderstood the VE more than once as the VE testified to the number of 8,904 twice during the hearing." Doc. 27 at 13. The Commissioner points out that the ALJ correctly noted the remaining numbers for available state and national jobs as testified to by the VE. *Id.* The Commissioner further argues that the ALJ's decision was supported by substantial evidence because 23,800 jobs, which represents the combined number of VE's testimony, in the national economy is a significant number. *Id.* at 14. In response to Plaintiff's argument that the VE's testimony lacked credibility, the Commissioner contends that the VE's experience and expertise provide a valid basis for her testimony.

At step five of the sequential evaluation process, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v),(g). In making this determination, "the ALJ must articulate

specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "[I]n order for a VE testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted). If the claimant is able to perform other work, she is not disabled. 20 C.F.R. §§404.1520(g); 416.920(g); *Phillips*, 357 F.3d at 1239. If the claimant cannot perform other work, she is disabled. *Phillips,* 357 F.3d at 1239. *Id.*

Work exists in the national economy if it exists in significant numbers either in the region where a claimant lives or in several regions of the country. *See* 42 U.S.C. § 1382c(a)(3)(B); 423(d)(2)(A); 404.1566(a); *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). In this context, the Eleventh Circuit has held that "the appropriate focus is the national economy." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015); *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule. As the court recently noted,

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (11th Cir. 2015) (citing *Allen* 816 F.2d at 603). In *Atha*, the court upheld the ALJ's decision that 440 jobs in Alabama and 23,800 jobs nationally, which the VE testified that Plaintiff could perform, constituted a

significant number.  *Id.* at 935.   In *Allen*, the court of appeals upheld the ALJ's finding that work existed in significant numbers where the VE testified that there were 174 small appliance repairman positions in the area of Georgia where the claimant lived, 1,600 general appliance repair jobs in the state, and 80,000 such jobs nationally, of which "[a] considerable number ... [were] in the small appliance field." *Allen*, 816 F.2d at 602.   The court stressed that because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, it could not reweigh the evidence or substitute its judgment for that of the Secretary.   *Id.*

Here, the ALJ used Rule 201.21 of the Medical-Vocational Guidelines as a framework for decision-making, in conjunction with the VE's testimony, to find if Plaintiff could perform other work.  Tr. 33, 71-79.   The ALJ asked the VE a hypothetical that included the impairments in Plaintiff's RFC.   Tr. 71-72.   Based upon that hypothetical, the VE concluded that, although Plaintiff would not be able to perform any of her past occupations, there were two jobs she could perform: addresser, which is sedentary, SVP of 2, unskilled, and of which there are 8,904 jobs nationally and 344 in Florida; and, document preparer, which is sedentary, an SVP of 2, unskilled, and of which there are 14,904 nationally and 746 within the state of Florida.   Tr. 72.   In response to the ALJ's additional inquiry of whether limiting the individual to being off task twenty percent of the day in addition to the regularly scheduled breaks, the VE testified that this would eliminate work.   *Id.* at 73.   In response to Plaintiff's counsel's inquiry of whether the data would be affected if an

individual must alternate sitting and standing every twenty minutes, the VE also testified that this would eliminate work.   Tr. 78.

As stated above, the ALJ correctly noted the VE's testimony with regard to the types and number of jobs available, with the exception of the number of addresser jobs in the national economy.   Where the VE testified that there are 8,904 such jobs nationally, the ALJ noted in her opinion that there are 89,004 such jobs nationally. Tr. 33.   To sum the parties' arguments, they both agree that the number in the ALJ's decision is different than that offered by the VE, however they disagree as to its significance.   The ALJ concluded that "[b]ased on the testimony of the vocational expert, . . . [and] considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 34.   In reviewing the record, and in light of the Eleventh Circuit precedent as discussed above, the Court concludes that there is sufficient evidence to support the ALJ's conclusion that there exist a significant numbers of jobs in the national economy that Plaintiff can perform.   It is entirely plausible that the ALJ's inclusion of "89,004" jobs as opposed to "8,904" is a typographical error.   Regardless of the error, the decision of the ALJ would nonetheless be supported by substantial evidence and would not affect the outcome.   As one court has noted:

> The Commissioner's decision is subject to harmless error review. *See, e.g., Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying the harmless error rule in a social security case); *see also* Fed.R.Civ.P. 61. The purpose of the harmless error rule is to avoid the waste of time and preserve judicial resources. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). If an error did not effect a party's substantial rights, then

> the error is harmless and should be disregarded. *See id.*; *see generally McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553–54, 104 S.Ct. 845, 848–49 (1984). A scrivener's error is harmless when the ALJ's decision would be the same despite the error. *See Jones v. Astrue*, 821 F.Supp.2d 842, 848 (N.D.Tex.2011).

*Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *3 (N.D. Ala. Mar. 18, 2013).   Because the Court finds, however, that remand is appropriate for the ALJ to reconsider the VE's testimony as to the number of jobs available that the Plaintiff could perform, as discussed below, the Court will direct the Commissioner also to address the typographical error upon remand.

Next, Plaintiff argues that the VE testimony lacked reliability because she admitted that she did not extrapolate the job numbers herself but relied on the extrapolation performed by the private Job Browser Pro SkillTran software.   Doc. 26 at 11.   She argues, "[t]his is incorrect because Job Browser does not estimate numbers for the particular DOT code."   *Id.*   Plaintiff, with supporting documentation, argues that Job Browser specifically emphasizes that its "projections are for the OES Statistical Group, NOT an individual DOT title."   Docs. 26 at 11-13, 26-4, 26-5.   She offers the example that the job of addresser is a part of the Occupational Employment Statistics ("OES") group which consists of 72 different DOT occupations and avers that,

> contrary to what the VE testified at the hearing, Job Browser specifically states that it does not separate the job numbers for addresser from the other 71 DOT occupations.   Similarly, the job of document preparer is a part of the OES group that consists of 7 different occupations.   Job Browser specifically states that it does not separate the numbers for the document preparer occupation from 6 other DOT occupations.

Doc. 26 at 11.

The Commissioner correctly responds that a VE may rely on her knowledge and expertise without producing detailed reports or statistics in support of her testimony.   Doc. 11 at 14; *see Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). In this case, however, the VE did not testify that she relied on her knowledge and expertise in determining the number of jobs in the national economy.   The VE testified that she exclusively relied on the extrapolation performed by the private Job Browser Pro SkillTran software, version 1.6.6.   Tr. 73-77.   The Commissioner argues that courts have upheld the use of commercially-available software as a resource for use by a VE to determine the number of available jobs.   Doc. 27 at 14. Unlike other cases in which courts have upheld a VE's testimony based on the VE's knowledge and expertise, in the present case, the VE testified that she relied exclusively on the software and not on her own knowledge and expertise.   In fact, when counsel sought clarification on how the VE derived the numbers or whether she knew how the software separated the individual addresser and document preparer numbers from their occupation groups, the VE's last response on this issue was, "again, I'm not an economist or anything like that."   Tr. 77.

The Commissioner provides three cases in which courts upheld the use of commercially-available software, including Job Browser Pro, as a resource for use by a VE in helping the VE to determine the number of available jobs.   Doc. 27 at 14 (citing *Drossman v. Astrue*, No. 3:10-CV-1118, 2011 WL 4496561 (N.D. Ohio Sept. 27,

2011); *Poisson v. Astrue*, No. 2:11-CV-245-NT, 2012 WL 1067661 (D. Me. Mar. 28, 2012); *Malone v. Astrue*, No. 3:10-CV-01137, 2011 WL 5879436 (M.D. Tenn. Nov. 23, 2011)).   These cases are factually distinguishable.   In *Drossman*, Plaintiff challenged the VE's testimony regarding the job numbers for the positions that the VE identified plaintiff could perform.   2011 WL 4496561, at *6.   Specifically, as in the present case, plaintiff argued that the VE relied on groups of occupations rather than on individual occupations in finding the available job figures.   *Id.*   In that case, the court upheld the ALJ's decision to credit the VE's testimony because the "VE did not rely solely on the Job Browser Pro software but also consulted with other vocational experts and sources of data used by other vocational experts."   *Id.*   In *Poisson*, while the VE acknowledged that she did not understand the exact methodology of the computer program that generated the specific job numbers, she "relied on her professional experience and expertise, and not strictly on a software program, in endorsing the numbers provided to the administrative law judge."   2012 WL 1067661, at *9.   Similarly, in *Malone*, the VE testified in detail as to the methodology of the program and also testified that she used her own experience to reduce the number of jobs where the software did not account for certain options. 2011 WL 5879436, at *3.   Thus, the VE's exclusive reliance on the software program without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise rendered her testimony unreliable.   Thus, remand is necessary to properly consider evidence regarding the number of jobs the Plaintiff could perform.

### b. *Whether the VE testimony was defective*

Plaintiff next contends that the VE testimony was defective because the VE identified jobs in the national economy that Plaintiff can perform with a "reasoning level" of 2 or 3, despite Plaintiff's limitation in the hypothetical to "simple, routine, repetitive tasks." Doc. 26 at 13-16.   The crux of her argument is that the reasoning levels noted in the DOT for each position, not the SVP, is inconsistent with the VE's testimony that Plaintiff could perform the jobs of addresser and document preparer under the limitation of "simple, routine, repetitive tasks." *Id.*   Specifically, she avers,

> [t]he job of addresser has a [r]easoning level of 2, which requires understanding and carrying out of detailed instructions.   The job of document preparer has an even higher [r]easoning level of 3[,] which requires understanding and carrying out instructions in written, oral, and diagrammatic form and dealing with problems that involve several concrete variables.

Doc. 26 at 15-16. Plaintiff further argues that the VE misinformed the ALJ of this inconsistency because the VE did not identify it as a conflict with the DOT.   *Id.*   The Commissioner asserts that the ALJ complied with her duty, pursuant to Social Security Ruling ("SSR") 00-4p, to inquire whether the VE's testimony conflicted with the DOT, and upon the VE stating that her testimony was consistent, with the exception of Plaintiff's established RFC recognizing her need to use a hand-held assistive device, the ALJ had no duty to interrogate the VE further.   Doc. 27 at 15-18.

Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about

any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." *Id.* Furthermore, she must resolve the conflict before relying on the VE and explain in her decision how she resolved the conflict. *Id.* The Eleventh Circuit has held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999).

In this case, the ALJ expressly determined as part of Plaintiff's RFC that Plaintiff is limited to "simple, routine, repetitive tasks." Tr. 24. The ALJ included a similar limitation in her hypothetical to the VE: "only occasional superficial interaction with public, co-workers and supervisors and able to perform simple, routine, and repetitive tasks." Tr. 72. The VE testified that a hypothetical individual with the limitations set forth in Plaintiff's RFC would be able to perform the job of addresser (DOT 209.587-010) and document preparer (DOT 249.587-018). Tr. 72. The ALJ complied with her obligation under SSR 00-4p and inquired whether the VE testimony was consistent with the DOT. Tr. 73. The VE responded, "well, where it does not address certain issues such as using assistive devices and being off task. My opinions are based on my training, experience, education regarding issues such as that." Tr. 73. Thus, the VE did not testify that her testimony was inconsistent with the DOT in any other respect.

Plaintiff correctly notes that courts in this district have addressed similar arguments and found that a limitation to simple, routine, or repetitive tasks is

inconsistent with a reasoning level of 2 or 3. *See e.g. Estrada v. Barnhart*, 417 F. Supp. 2d 1299 (M.D. Fla. 2006); *Cousins v. Colvin*, No. 2:12-CV-505-FTM-29, 2013 WL 5278271 (M.D. Fla. Aug. 23, 2013), report and recommendation adopted as modified, No. 2:12-CV-505-FTM-29DNF, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013). Regardless of the existence of conflict, this Court has previously held that once a VE testifies that her testimony is consistent with the DOT, the ALJ is not under an obligation to inquire further, or to investigate potential conflicts that were not raised at the hearing. *Marley v. Comm'r of Soc. Sec.*, No. 8:13-CV-2384-T-CM, 2015 WL 847376, at *1 (M.D. Fla. Feb. 26, 2015). Several cases support this holding. In *Leigh v. Comm'r of Soc. Sec.*, the Eleventh Circuit upheld an ALJ decision where, as here, the plaintiff argued that the ALJ's inclusion of limitations of "simple, routine, repetitive" tasks in the hypothetical to the VE conflicted with the reasoning level for the jobs the VE identified that the plaintiff could perform in the DOT. 496 F. App'x 973, 975 (11th Cir. 2012) (unpublished). The Court did not specifically hold that there was a conflict but instead held, "even assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that [ the plaintiff] was not disabled" because the testimony of a VE trumps the DOT in cases of inconsistency. *Id.* at 975 (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999). In *Leigh*, the ALJ asked the VE if there were any inconsistences, and the VE responded in the negative. *Id.* at 973. The Court found that Plaintiff "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion. . . . [Thus, b]ecause there was no apparent inconsistency

between the VE opinion and the DOT, the ALJ's decision is supported by substantial evidence. " *Id.* at 975.   Additionally, in *Garskof v. Astrue*, the court held that "the ALJ is not required independently to identify whether there is any inconsistency." No. 507-CV-288-OC-GRJ, 2008 WL 4405050, at *6 (M.D. Fla. Sept. 26, 2008).   This was especially true in *Garskof* where "[p]laintiff never identified any conflicts at the hearing and never raised any conflict through questioning the VE, despite being represented by counsel."   *Id.   See also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-CV-48-OC-DNF, 2014 WL 582885, at *1 (M.D. Fla. Feb. 13, 2014) ("No conflicts were raised during the hearing by the vocational expert or by Plaintiff's representative. Neither case law nor SSR 00–4p require an ALJ to resolve a conflict that was not identified and was not otherwise apparent.").

In the present case, the ALJ complied with her duty under SSR 00-4p.   The VE testified that there was no conflict aside from those issues such as using an assistive device and being off task.   Tr. 73.   In her decision, the ALJ writes,

> [p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT), with one sole exception. The VE stated that the DOT does not address the use of an assistive device; therefore, she relied on her knowledge, and experience in the field to arrive at her conclusions. I find that there is no discrepancy with the DOT, and that the claimant relied on her expertise to address the use of a handheld device, which is not contained in the DOT. Therefore, I find that her testimony is reliable, and any inconsistencies are resolved adequately.

Tr. 34.   Plaintiff's counsel cross-examined the VE, however not on the issues of any inconsistencies between her testimony and the DOT.   Tr. 73-79.   The ALJ fully complied with her obligation under SSR 00-4p and was not under an independent

obligation to identify and resolve any inconsistency aside from the ones presented by the VE.   Because the Court finds, however, that remand is appropriate for the ALJ to reconsider the VE's testimony as to the number of jobs available that the Plaintiff could perform, the Court will direct the Commissioner to address the inconsistency between the VE testimony and the DOT with regards to the reasoning requirements for the addresser and document preparer jobs.

> c.  *Whether the ALJ failed to include all the limitations determined by the state agency psychological consultants in the RFC assessment and the ALJ's hypothetical question to the VE*

Plaintiff next argues that the ALJ's decision is not supported by substantial evidence because she gave great weight to state agency psychological consultants, Mercedes DeCubas, Ph.D., and Carlos Perez, Ph.D., but failed to include certain adaptation limitations, included in their opinions, in the ALJ's findings of the RFC and in the hypothetical to the VE.   Doc. 26 at 16-19.   Specifically, Plaintiff argues that both psychological consultants opined that Plaintiff has moderate limitations in her ability to respond appropriately to changes in the work setting, however the RFC does not include this limitation.   *Id.*   Moreover, Dr. Perez opined that timed work may be too stressful for the Plaintiff, but this also was not included in the RFC or hypothetical to the VE.   *Id.* at 18.   Plaintiff contends that "the job of document preparer involves *frequent changes* of tasks involving different aptitudes, technologies, techniques, procedures, working conditions, physical demands, or degrees of attentiveness without loss of efficiency or composure"  and this may be inconsistent with the opinions that that Plaintiff has moderate limitations in her ability to respond appropriately to changes in the work setting.   *Id.*   Plaintiff also

contends that the job of addresser involves "performing a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace, with little opportunity for diversion or interruption . . . [and] this appears to be inconsistent with Dr. Perez opinion that time work may be too stressful." *Id.*

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). In assessing the medical evidence, the ALJ is required to state with particularity the weight given to the different medical opinions and the reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Furthermore, the claimant's age, education, work experience and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon *all relevant evidence* of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d 1232, 1238 (11th Cir. 2004) (emphasis added); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). Opinions on some issues, however, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); SSR 96-

5p. Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1).

> In determining the Plaintiff's RFC, the ALJ stated,

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

Tr. 28.   The ALJ considered Plaintiff's testimony, medical records, and stated with particularity the weight given to the different medical opinions.   Tr. 25-32.   The ALJ gave great weight to both Drs. Perez and DeCubas, who rated Plaintiff's adaptation limitations.   Tr. 30.   Both psychologists rated four adaptation limitation areas.   Tr. 98-99, 125.   Both psychologists opined that Plaintiff was "moderately limited" in the ability to respond appropriately to changes in the work setting, but otherwise stated that Plaintiff was "not significantly limited" in the three other functional areas.   Tr. 30, 98-99, 125.   Both psychologists also included the narrative summary of Plaintiff's adaptation limitations:

> FROM PSYCH.   PERSPECTIVE, ABLE TO SUSTAIN GOAL DIRECTED ACTIVITY <u>IN A ROUTINE SETTING</u>.   CAN FUNCTION ADEQUATELY AS PHYSICAL ALLOWS.   CLMT <u>IS ABLE TO DO ROUTINE TASKS</u>.   CLMT IS <u>ABLE TO FOLLOW SIMPLE INSTRUCTIONS</u> & CAN TAKE CARE OF HER NEEDS AS PHYSICAL ALLOWS.   PSYCH TX. WILL BE HELPFUL TO HER FOR SUPPORT. <u>NEEDS A ROUTINE SETTING</u> TO AVOID INCREASED STRESS.

Tr. 98-99, 125 (emphasis added).   Furthermore, with respect to Plaintiff's sustained

concentration and persistence limitations, Dr. Perez opined that Plaintiff is able to carry out simple instructions, and she "may get distracted but can sustain A&C in a routine setting. Timed work may be too stressful." Tr. 124. He concluded that "[i]n summary, medical records show clmt will be able to perform simple and repetitive tasks." Tr. 125. The ALJ considered both psychologists' conclusions and limited Plaintiff "to only simple, routine, and repetitive tasks." Tr. 24-25, 30. The ALJ included a similar limitation in her hypothetical to the VE: "only occasional superficial interaction with public, co-workers and supervisors and able to perform simple, routine, and repetitive tasks." Tr. 72. The Commissioner is correct in noting that although the ALJ did not expressly state in her RFC finding or the hypothetical to the VE that Plaintiff has a moderate limitation in her ability to respond appropriately to changes in the work setting, she appropriately incorporated the narrative findings of both psychologists when she included the limitation of "simple, routine, and repetitive tasks" to the Plaintiff's RFC and in her hypothetical to the VE. Plaintiff relies on *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 869 (11th Cir. 2012), which is distinguishable for two reasons. In *Watkins*, the ALJ explicitly addressed and gave great weight to a treating physician's RFC evaluation in determining the plaintiff's RFC. Id. at 871. The treating physician opined that the plaintiff could not work more than five or six hours in an eight hour workday if she had a sit/stand option. *Id.* The ALJ failed to incorporate this limitation in her RFC or her hypothetical to the VE. *Id.* Unlike in *Watkins*, the ALJ in the present case considered the psychologists' narrative conclusions, and included them in the Plaintiff's RFC and her hypothetical

to the VE, albeit not verbatim.   Moreover, the psychologists opined that timed work "may" be too stressful, but did not preclude it.   Additionally, the Court agrees with the Commissioner's statement that Plaintiff appears to argue that timed work equates to repetitive work, which is unsupported by the evidence.   Accordingly, the ALJ properly considered Plaintiff's adaptation limitation in determining Plaintiff's RFC.

## V. CONCLUSION

Upon review of the record, the undersigned concludes that the VE testimony regarding the availability of jobs that Plaintiff can perform was unreliable. Therefore, the Court finds that the ALJ's decision was not supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED**:

1.    The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g); for the Commissioner to:

      A.    Properly consider the evidence regarding the number of jobs the Plaintiff could perform;

      B.    Consider the inconsistency between the VE testimony and the DOT with regards to the reasoning requirements of the addresser and document preparer jobs;

      C.    Issue a new decision based on substantial evidence;

      D.    Make any further determinations consistent with this Opinion and Order, or in the interests of justice.

2.    The Clerk of Court is directed to enter judgment in favor Plaintiff,

Janelle Thompson, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 15th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record